2003 ME 149

ISIS DEVELOPMENT, LLC

v.

TOWN OF WELLS.

Supreme Judicial Court of Maine.

Submitted On Briefs: Oct. 23, 2003.

Decided: Dec. 22, 2003.

(GBD) is a business engaged in "warehousing" and not a "service business" as defined in the Town's Land Use Code. We agree with the Town that a self-storage business is not a "service business," vacate the Superior Court judgment, and remand for the entry of a judgment affirming the decision of the ZBA.

## I. BACKGROUND

[¶ 2] In 2002, Isis filed a pre-application for construction of a three-story, 24,000 square foot, brick self-storage building in the Town's GBD. The Town's Code Enforcement Officer rejected Isis's pre-application, determining that, because the proposed business was "warehousing" as defined by the ordinance,[1] it was not permitted in the GBD. Wells, Me., Code § 145–26(C), (E) (Nov. 2, 1993). Contending that a self-storage business is not a business engaged in "warehousing," but rather is a "service business,"[2] Isis appealed to the ZBA, which, after a hearing, unanimously affirmed the decision of the Code Enforcement Officer.[3] The Superior Court vacated the ZBA decision and the Town filed this appeal.

## II. DISCUSSION

■ [¶ 3] The parties do not dispute the nature or physical description of the

David A. Lourie, Cape Elizabeth, for plaintiff.

Durward W. Parkinson, Leah B. Rachin, Bergen & Parkinson, LLC, Kennebunk, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] The Town of Wells appeals from a judgment entered in the Superior Court (York County, *Fritzsche, J.*) vacating the determination of the Town's Zoning Board of Appeals (ZBA) that the self-storage facility Isis Development, LLC proposes for the Town's General Business District

---

1. The ordinance defines "warehousing" as "[a] business engaged in the storage, wholesale and/or distribution of products, goods, supplies and equipment." Wells, Me., Code § 145–10 (Nov. 2, 1993). "Warehousing," though not permitted in the GBD, is permitted in the Town's Light Industrial District. *Id.* § 145–28(C)(19) (April 28, 1995).

2. The ordinance expressly and exclusively permits certain types of businesses in the GBD, including a "Business, service" (service business). *Id.* § 145–26(C)(8) (Nov. 2, 1993). The ordinance defines this type of business as "[a] business engaged in the provision of an *actual service* on the premises, such as but not limited to cleaning or repairing personal property, training or teaching people, a small

animal veterinary practice, pet grooming, the redemption of beverage containers or a funeral home." *Id.* § 145–10 (emphasis added).

3. Isis contends that the ZBA acted with bias in its denial of its administrative appeal. An argument alleging favoritism must be supported by factual evidence. *See Glasser v. Town of Northport,* 589 A.2d 1280, 1283–84 (Me.1991). Although Isis alleges that biased individuals spoke at the ZBA hearing and that powerful local actors controlled the outcome, evidence that the ZBA itself acted improperly was not presented to the Superior Court and there is no indication in the record that the ZBA acted other than appropriately. Therefore we do not address Isis's allegation of bias.

proposed self-storage facility; rather, their dispute centers on an interpretation of the ordinance—a question of law. When a ZBA "acts as the tribunal of original jurisdiction, as both factfinder and decision maker, we review its decision directly for errors of law ...." *Priestly v. Town of Hermon*, 2003 ME 9, ¶ 6, 814 A.2d 995, 997 (citing *Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶ 10, 763 A.2d 1168, 1171). The "[i]nterpretation of a zoning ordinance is a question of law that we review de novo." *Id.* ¶ 7 (citing *DeSomma v. Town of Casco*, 2000 ME 113, ¶ 8, 755 A.2d 485, 487).[4] In construing the language of an ordinance, we consider " 'both the objectives sought to be obtained and the general structure of the ordinance as a whole.' " *Id.* (quoting *Gerald v. Town of York*, 589 A.2d 1272, 1274 (Me.1991)).[5]

[¶ 4] We look both to the ordinance as a whole and to its first enumerated purpose, implementation of the Town's Comprehensive Plan. *See* Wells, Me., Code § 145-4(A) (Nov. 2, 1993). The GBD, located on Route 1 in Wells, is described by the Town's Comprehensive Plan as "a scenic, historic, seacoast, traditional New England style, rural/village-like, antique and arts related commercial business oriented corridor," Wells, Me., Comprehensive Plan 7 (April 12, 2002), and the ordinance reflects the Comprehensive Plan's view by restricting land uses within the GBD to an *exclusive* list, § 145-26(C) (Nov. 2, 1993 & Apr. 26, 1996).

[¶ 5] The Town construes the ordinance to mean that a self-storage business is not a permitted use within the GBD because it is not a "business engaged in the provision of an *actual service* on the premises" as are the examples the ordinance provides. *Id.* § 145-10 (Nov. 2, 1993) (emphasis added); *see supra* note 2. Isis contends that merely by offering storage space, its self-storage facility would be providing an "actual service." Isis's interpretation of the phrase "actual service" is so broad that it incorporates any business that offers goods, service, or space, and therefore renders the ordinance's definition meaningless. We agree with the Town that a self-storage facility does not provide an "actual service on the premises."

[¶ 6] Because we agree that a self-storage facility does not provide an "actual service on the premises," and therefore is not a "service business" as defined by the

---

4. Because of a state agency's professional and often technical expertise, we grant deference to its interpretation of a state statute or regulation it regularly administers, and uphold the agency's interpretation unless the statute or regulation compels a contrary result. *See Thacker v. Konover Dev. Corp.*, 2003 ME 30, ¶ 14, 818 A.2d 1013, 1019 (granting deference when reviewing the Maine Department of Transportation Commissioner's interpretation of a statute administered by the MDOT). We review interpretations of local zoning ordinances by local volunteer boards de novo. *See Priestly*, 2003 ME 9, ¶ 7, 814 A.2d at 997. Some decisions rendered by this Court have mistakenly merged the de novo and deferential reviews. *See, e.g., Griffin v. Town of Dedham*, 2002 ME 105, ¶ 7, 799 A.2d 1239, 1242; *Wright v. Town of Kennebunkport*, 1998 ME 184, ¶ 5, 715 A.2d 162, 164.

5. Contrary to Isis's contentions that the Town inappropriately relies on arguments and authority not before the Superior Court, it is neither necessary to strike the supplement supplied to this Court by the Town containing the entire land use ordinance in question and the Town's Comprehensive Plan, *see* M.R.App. P. 8(h)(2); M.R.App. P. 8(*l*), nor to strike portions of the Town's brief, *see* M.R.App. P. 9(a); DONALD G. ALEXANDER, MAINE APPELLATE PRACTICE § 9.2, at 83 (1st ed. 2003) ("Briefs may rely on any source and cite any appropriate authority for the legal arguments made."). Isis argues that the appendix must be restricted to *factual evidence* included in the record. However, an appropriate supplement of legal authorities such as the Town offers need not be stricken.

ordinance, we need not decide whether a self-storage facility engages in "warehousing." [6]

[¶ 7] The ZBA's interpretation of the ordinance is consistent with "both the objectives sought to be obtained and the general structure of the ordinance as a whole." *Priestly*, 2003 ME 9, ¶ 7, 814 A.2d at 997 (internal quotation omitted).

The entry is:

Judgment vacated and remanded to the Superior Court for entry of a judgment affirming the decision of the Zoning Board of Appeals.

---

6. The Town also construes the ordinance to mean that a self-storage facility is excluded from the GBD because it does engage in the "storage . . . of products, goods, supplies and equipment." *See* §§ 145–10, 145–26 (Nov. 2, 1993 & Apr. 26, 1996). Isis contends that the ordinance's definition of "warehousing" is not meant to be read serially as the Town reads it, but that the phrase "wholesale and/or distribution" is meant to modify and limit the word "storage." Therefore, Isis contends, because a self-storage business does not engage in "wholesale and/or distribution," it cannot be engaged in "warehousing." Isis also contends that there is an obvious inference that a business engaged in warehousing is a larger, more commercial venture than is a self-storage facility.