STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-04-68
SKS- KEN- 9/27 2004

DOROTHY M. MELANSON,

      Petitioner

     v.

DEPARTMENT OF THE
SECRETARY OF STATE,

      Respondent

     And

RALPH NADER, et al.,

      Respondent-Intervenors

**DECISION ON APPEAL**

DONALD L. GARBRECHT
LAW LIBRARY

NOV 5 2004

This matter comes before the court on appeal pursuant to 21-A M.R.S.A. § 356(2)(D) and M.R. Civ. P. 80B.[1] The appeal is from a decision of the Secretary of State (Secretary) dated September 8, 2004, adopting the report and recommendations of a departmental Hearing Officer. The Hearing Officer rejected challenges to certain petitions circulated by supporters of Ralph Nader and Peter Miguel Camejo as candidates for the offices of President and Vice President respectively. The petitions are technically on behalf of a Slate of Presidential Electors and are necessary to get the names of Mr. Nader and Mr. Camejo, who are running as unenrolled candidates in Maine, on the ballot for the November election. This decision by the Secretary was timely appealed to the Superior Court by petitioner Melanson, and a motion by Mr.

---

[1] The proceeding pursuant to M.R. Civ. P. 80B is set forth in section 356(2)(D), rather than as a review of final agency action pursuant to Rule 80C. Elsewhere in Title 21-A, the legislature has designated that appeals to the Superior Court on other questions, such as initiative and referendum petitions, should be in accordance with Rule 80C. 21-A M.R.S.A. § 905(2). No explanation for the different treatment is given.

Nader and Mr. Camejo to intervene has been granted. Counsel for all three parties were most cooperative in meeting an expedited briefing schedule, followed by oral argument on September 24, 2004.

The legal and practical effect of the Secretary's decision is to include the Nader/Camejo ticket on the November ballot, though technically the votes are cast for the Slate of Electors supporting these candidates. If successful, the electors then act as proxies for the candidates in casting their ballots as part of the Electoral College. After reviewing the evidence of record, the Hearing Officer's report, and the oral and written arguments of the parties, the court will affirm the decision of the Secretary for reasons detailed below.

### Standard of Review and Constitutional Considerations

The standard of review for the court in a Rule 80B appeal is whether the decision by the agency contains errors of law, abuse of discretion or findings of fact unsupported by the record. *Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶ 10, 763 A.2d 1168. Petitioner Melanson ("petitioner") has listed four separate grounds for the appeal, as set forth below. At oral argument, counsel for the petitioner refined the objections to an abuse of discretion as to count I and errors of law as to counts II, III and IV.

In addition to the usual standard for review for a Rule 80b appeal, the court must consider the guidance provided by the United States Supreme Court and Maine's Supreme Judicial Court in similar ballot access cases. The analysis begins with the First Section of the Second Article of the United States Constitution, which designates that the States have the responsibility for selecting presidential electors and have broad powers in determining that selection process. However, these broad powers to regulate the electoral process are subject to other constitutional provisions such as the right to political association, effective voting, and Equal Protection. *Williams v. Rhodes*, 393 U.S.

23, 29-30 (1968). These contrasting constitutional rights must be given great weight, for, as the Supreme Court has stated, "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). The State may attempt to prevent frivolous candidacies from getting to the ballot. However, this legitimate state interest must be balanced with the candidate's interest in the availability of political opportunity. *Lubin v. Parrish*, 415 U.S. 709, 715 (1974).

Courts have also indicated that statutory analysis in this area requires two steps: first, a consideration of the character and size of the injury to the First and Fourteenth Amendment rights of the would-be candidate; and second, an evaluation of the State interest being protected. That State interest becomes an important national interest when considering candidates for nationwide office, i.e., president and vice-president. *Anderson v. Celebrezze*, 460 U.S. 780, 789 & 795 (1983). In addition, the "high nature" of the right of a prospective candidate to appear on the ballot and the Secretary's responsibility in this regard have been recognized in Maine (*Communist Party of the United States v. Gartley*, 363 A.2d 948 (Me. 1976)). Also recognized is that voting is a fundamental right at the heart of the democratic process. (*Krafts v. Quinn*, 482 A.2d 825 (Me. 1984)).

The case law noted above is not exclusive, but suggests the tenor of guidance on judicial review of ballot questions of the type in the present case. It is with these principles and the scope of review for a Rule 80B appeal in mind, that the court turns to the individual challenges of the petitioner.

## I

The petitioner's first ground for appeal concerns the identification of one of the four candidates for elector as it appeared on some of the petitions that were circulated.

None of the parties dispute the fact that this would-be presidential elector's given birth name is Joseph Noble Snowdeal. However, Mr. Snowdeal has been known exclusively in his community as "J. Noble Snowdeal." At some point during the processing of the consent form and petitioner lists, there appears to have miscommunication, probably with the Nader/Camejo national campaign staff. As a result, while the consent form and two of the 479 petitions accurately reflect the elector as "J. Noble Snowdeal," the rest of the petitions identify him as "John Noble Snowdeal." The present petitioner argued to the hearing officer that there is no John Noble Snowdeal and therefore no valid elector and the remainders of the petitions must be invalidated.

The hearing officer used a common sense approach to this issue. Her finding was ". . . that the name 'John Noble Snowdeal' does not represent a fictitious person, but instead is an incorrect statement of a real elector's first name," thereby invoking without citation the "immaterial irregularities provision of 21-A M.R.S.A. § 3(1)."[2] The hearing officer then suggested that the unique combination of middle and last name would make it unlikely that anyone reviewing the petition would be misled, and pointed out that the petitioner had presented no evidence of anyone actually being misled. The Hearing Officer also found that the petitioner presented no evidence to rebut the explanation that the incorrect first name was an honest mistake and recommended to the Secretary that the petitions not be rejected.

The petitioner argues that the Secretary's adoption of this recommendation was an abuse of his discretion. The court disagrees. The analysis by the hearing officer, and particularly the lack of any evidence of confusion by those signing or reviewing the

---

[2] "Immaterial irregularities. Immaterial irregularities include, but are not limited to, misspelling, inclusion or omission of initials and substitution of initials for given names." The section provides that such immaterial irregularities "shall not invalidate the name or signature if the identify of the person named is clear to the public official charged with reviewing that document."

petitions is persuasive. Mr. Snowdeal is a living, breathing person who testified before the Hearing Officer, not a ficitious would-be elector created to fool petition signers. Acceptance of the petitions with the incorrect first name is appropriate, whether as a matter of application of section 3 of the statute or as an exercise of the Secretary's discretion on questions of this type.[3] There was no abuse of discretion.

## II

The petitioner next argues that the Secretary committed an error of law in adopting the Hearing Officer's conclusion concerning what information must appear on the face of the petition. The argument is that the Secretary disregarded the requirements of 21-A M.R.S.A. § 353 when he certified the petitions for circulation. Specifically, the statute requires that the registrar certify that the "person who seeks nomination by petition" has not been enrolled in a party and "must certify to that fact *on the petition.*" The petitioner points out that this certification is not on the face of the petition. The Secretary concluded that the use of a separate form entitled "Non-Party Presidential Elector Consent and Certification of Unenrollment" attached to the master petition was sufficient, citing the Secretary's authority pursuant to 21-A M.R.S.A. § 21 concerning the drafting of documents and forms. The Secretary also suggests that literal compliance with the statute would leave too little room on the form for collecting signatures.

---

[3] None of the parties commented on the fact that the "headline" names on the petitions are "Ralph Nader" and "Peter Miguel Camejo" and the voters signing the petition indicate that they "hereby propose for nomination at the general election . . . the following named candidates for the office of PRESIDENT and VICE-PRESIDENT of the United States." (Record Document H-1). Even though the four would-be electors listed later technically are the ones being elected, their offices are of limited life and responsibility compared with that of the candidates for whom they are proxy. The decision on this appeal does not consider the issue of mistaken names if the mistake was in the name of one of the principle candidates.

For many years the Secretary has followed a practice that incorporates both the petition form and the consent and certification, though two documents, as one petition. The decisions of State administrators interpreting the laws which they administer are entitled to deference from the court. *Isis Development, LLC v. Town of Wells*, 203 ME 149, ¶ 3, n.4, 836 A.2d 1285, 1287. The court gives such deference great weight in an area where the statutes are as specialized as those in the area of elections. The Secretary's interpretation of the statute provides the needed information even if not on the front page. With the Secretary's interpretation and practice, information potential signers may wish is available to the curious. At the same time, the candidate's interest in getting on the ballot clearly outweighs the interest of having all four certifications appear on the face of the petition, when they are available elsewhere.

### III

The petitioner next argues that the Secretary erred as a matter of law in not requiring that Mr. Nader or Mr. Camejo file written "consent" and "unenrollment" forms. Historically, the Secretary has required that only the slate of electors file such consent and unenrollment forms because technically it is the electors who are being elected, not the actual candidates for the office of president and vice-president. These forms were required for each of the would-be electors. Although this interpretation might seem counter-intuitive considering the relative importance of the electors vis-à-vis the candidates for president/vice-president, it is an interpretation which is technically viable and again, entitled to deference. If the concern is preventing political mischief by enrolled interests, that concern is met by requiring the elector candidates to file.

### IV

The petitioner's final argument concerns more specifically the requirement of "unenrollment" as it applies to Mr. Camejo.[4] There is no dispute that Mr. Camejo was a member of the Green Party in his home state of California on and after March 1, 2004, but was not required to submit the forms which would have revealed this fact. The Secretary concluded that the statute did not apply to the candidates for national office (president and vice/president) but only to the slate of electors. On this appeal, the Secretary also argues that it is a long held interpretation and practice of his office that the filing requirements for consent and unenrollment do not apply to these few national office candidates, at least as long as the candidates are not Maine residents. In other words, whether a candidate for vice-president is enrolled in a party in California is irrelevant as long as he is not enrolled in a party in Maine. The Secretary's interpretation is sound and entitled to deference. There is no error of law.

The petitioner has failed to sustain her burden to show errors of law, abuse of discretion, or facts unsupported by the record as to any of the four counts in her petition. Therefore, the entry will be:

Appeal DENIED. REMANDED to the Secretary of State.

Dated: September 27, 2004

S. Kirk Studstrup
Justice, Superior Court

---

[4] Other arguments beside the four listed in the petition for review were not addressed by the petitioner at oral argument and are considered abandoned.

Date Filed ___9/10/04___ ___Kennebec___ Docket No. ___AP04-68___
County

Action ___Petition for Review___
80B

Philip Worden, Esq. (Intervenor)      William Dale, Esq.      **J. STUDSTRUP**
PO Box 1009                            PO Box 4510
Northeast Harbor Maine  04662          Portland Maine  04112

Dorothy M. Melanson                    vs.      Secretary of State

**Plaintiff's Attorney**                        **Defendant's Attorney**

Jonathan S. Piper, Esq.                         PHYLLIS GARDINER AAG
Michael K. Mahoney, Esq.                        STATE HOUSE STA 6
One City Center                                 AUGUSTA MAINE  04333
P.O. Box 9546
Portland, Maine 04112-9546

| Date of Entry | |
|---|---|
| 9/10/04 | Petition for Review, filed. s/Mahoney, Esq. |
| 9/14/04 | Entry of Appearance, filed. s/Gardiner, AAG. |
| ------ | Original Summons with return service made upon Secretary of State on 9/10/0 |
| 9/15/04 | HEARING/CONFERENCE RECORD, Studstrup, J. Record and petitioner's brief due 9/20/04; opposing brief due 9/22/04; reply brief due 9/23/04; oral argument 9/24/04; court's written decision due 9/28/04. Parties to provide draft findings of fact. Copies mailed to attys of record. |
| | Notice of setting of oral argument on 9/24/04 at 2:00 p.m. sent to attys of record. |
| 9/21/04 | Certified Record, filed. s/Gardiner, AAG. |
| 9/21/04 | Petitioner Brief, filed. s/ Mahoney, Esq. (filed on 9/20/04) |
| 9/22/04 | Motion to Dismiss, filed. s/Worden, Esq. Motion to Intervene, filed. s/Worden, Esq. Motion for Trial of Facts, filed. s/Worden, Esq. |
| 9/22/04 | Entry of Appearance, filed. s/Dale, Esq. Rule 80B Brief and Memorandum of Pending Motions, filed. |
| ------ | Brief of Respondent Secretary of State, filed. s/Gardiner, AAG. |
| 9/23/04 | Response to Petitioner's Proposed Findings of Fact, filed. s/Gardiner, A |
| 9/23/04 | Withdrawal of Counsel for the canidates, filed. s/P. Worden, Esq. |
| 9/23/04 | Petitioner's Opposition to Motion for Trial Facts; Petitioner's Reply Memorandum of Law in Response to Brief of Respondent Secretary of State; and Petitioner's Reply Memorandum of Law in Response to Intervernors' Rule 80B Brief, filed. s/M. Mahoney, Esq. |
| 9/24/04 | Hearing had with Hon. Justice Kirk Studstrup, presiding. Tape #662, 665 Index 3993-7086, 0001-273 Michael Mahoney, Esq. for the Plaintiff. Phyllis Gardiner, AAG and Bill Dale, Intervenor. |